IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

Case No. 23-10315-A

WORTH GROUP, INC. and
ANDREW WILSHIRE,
*Petitioners-Appellants*

*v.*

ROSALYN MORALES
*Respondent-Appellee.*

## PETITIONERS'/APPELLANTS'
## INITIAL BRIEF

| | Stephen James Binhak, Esq. |
|---|---|
| | THE LAW OFFICE OF STEPHEN JAMES BINHAK, PLLC |
| | One Southeast Third Ave., Suite 2600 |
| | Miami, Florida 33131 |
| | Telephone: (305) 361-5500 |
| | binhaks@binhaklaw.com |
| | *Counsel for Petitioners-Appellants* |

*Worth Group, Inc. and Andrew Wilshire v. Rosalyn Morales*

## Case No. 23-10315-A

## CERTIFICATE OF INTERESTED PERSONS
## AND
## CORPORATE DISCLOSURE STATEMENT

*Petitioners-Appellants*, Worth Group, Inc. and Andrew Wilshire. submit this list, which includes the trial judge, and all attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this review:

1.    Stephen James Binhak, Esq., *Attorney for Petitioners-Appellants*

2.    The Law Office of Stephen James Binhak, *Attorney for Petitioners-Appellants*

3.    Aaron M. Cohn, Esq., *Attorney for Respondent-Appellee*

4.    Weinberg Wheeler Hudgens & Dial, LLC, *Attorney for Respondent-Appellee*

5.    Hon. Aileen M. Cannon, *U.S. District Court Judge*

6.    Hon. Ryon M. McCabe, *U.S. Magistrate Judge*

7.    Andrew Wilshire, *Petitioner-Appellant*

8.    Worth Group, Inc., *Petitioner-Appellant*

9.    Rosalyn Morales, *Respondent-Appellee*

I

Pursuant to Federal Rule of Appellate Procedures 26.1 and Eleventh Circuit Rules 26.101 through 26.1-3, *Petitioners-Appellants*, Worth Group, Inc. and Andrew Wilshire make the following statement as to corporate ownership:

Worth Group, Inc. is a Florida Profit Corporation.

No publicly traded company or corporation has an interest in the outcome of the case or appeal.

_____ */s/ Stephen James Binhak* _____
Stephen James Binhak

## STATEMENT REGARDING ORAL ARGUMENT

Worth Group, Inc. and Andrew Wilshire request oral argument in this matter because there does not appear to be another case in this Circuit which addresses similar facts. Accordingly, Worth Group, Inc. and Mr. Wilshire submit that oral argument will aid the Court in deciding this case.

## **<u>TABLE OF CONTENTS</u>**

**<u>Page</u>**

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
DISCLOSURE STATEMENT                                                          I

STATEMENT REGARDING ORAL ARGUMENT                           i

TABLE OF CONTENTS                                                             iii

TABLE OF CITATIONS                                                            v

STATEMENT OF JURISDICTION                                            1

STATEMENT OF THE ISSUES                                               2

STATEMENT OF THE CASE                                                  4

Course of Proceedings and Disposition Below                      6

STATEMENT OF THE FACTS                                               8

I.  Ms. Morales' Contract With Worth Group                         8

STANDARD OF REVIEW                                                    12

SUMMARY OF THE ARGUMENT                                        13

ARGUMENT AND CITATIONS OF AUTHORITY                 16

I.   The District Incorrectly Determined There Is No Personal Jurisdiction Over Ms.
Morales                                                                             16

A. Personal Jurisdiction Law                                               16

B. Worth Group and Mr. Wilshire Alleged That Ms. Morales Breached A Contract
in Florida                                                                          17

C. The Worth Group Contract's Plain Language Supports The Allegation     19

1. The Obligation To File in Palm Beach County, Florida           20

2. The Obligation To Arbitrate in Palm Beach County, Florida    24

D. The Case Law Supports Personal Jurisdiction    24

II. To The Extent The Issue Remains Alive, The District Judge Erred By Granting the Motion to Transfer    29

A. Federal Transfer Law    30

B. This Case Cannot Be Brought in California    31

C. The Magistrate Judge Incorrectly Applied Federal Transfer Law    38

CONCLUSION    41

## <u>TABLE OF CITATIONS</u>

**Opinions**

**United States Supreme Court**

*Van Dusen v. Barrack*,
  376 U.S. 612 (1964)……………………………………………………..30

**United States Courts of Appeals**

*Davis v. LG Chem, Ltd.*,
  849 Fed. Appx 855 (11th Cir. 2021)………………………………….12

*Carmouche v. Tamboriee Management, Inc.*,
  798 F.3d 1201 (11th Cir. 2015)…………………………………………17

*Louis Vuitton Malletier, S.A. v. Mosseri*,
  736 F.3d 1339 (11th Cir. 2013)……………………………………...16, 17

*Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*,
  447 F.3d 1357 (11th Cir. 2006)…………………………………………17

*Manuel v. Converges Corp.*,
  430 F. 3d 1132  (11th Cir. 2005)………………………………………...31

*SMRE Racks, Inc. Sistemas Mecánicos Para Electronica,* S.A.,
  382 F.3d 1097, 1101 (11th Cir. 2004)………………………………...31

*Robinson v. Giarmarco & Bill*,
  74 F. 3d 253 (11th Cir. 1996)…………………………………………31

*Ansari v. Qwest Communications*,
  414 F.3d 1214 (10th Cir. 2005)………………………………...15, 32

*Sovak v. Chugai Pharm. Co*.,
  280 F.3d 1266 (9th Cir. 2002)………………………………………...34

iv

*Textile Unlimited v. A..bmhand Co.*,
        240 F. 3d 781 (9th Cir. 2001)…………………………………31, 34, 35, 36

*Continental Grain Co. v. Dant & Russell, Inc*,
        118 F.2d 967  (9th Cir. 1941)……………………………………………..34

*Continental Casualty Company v. AmericanNational Insurance*,
        417 F. 3d 727 (7th Cir. 2005)…………………………………………..33

*Merrill Lynch, Pierce, Fenner & Smith v. Laue*r,
        49 F. 3d 323 (7th Cir. 1995)……………………………………15, 33, 35, 36

*Inland Bulk Transfer Co. v. Cummins Engine Co.*,
        332 F.3d 1007 (6th Cir. 2003)……………………………………………15, 33

*Howell v. Tanner*,
        650 F.2d 610, 616 (5th Cir,. Unit B 1981), *cert.* denied, 456 U.S. 918, 72
(1982)…………………………………………………………………………..31

*Dupuy-Busching Gen. Agency v. Ambassador Ins. Co*.,
        524 F.2d 1275 (5th Cir. 1975)……………………………………………..34

*Port Erie Plastics, Inc. Uptown Nails, LLC.*, 1
        73 Fed.Appx. 123 (3d Cir. 2006)……………………………………………15, 33

## United States District Courts

*Global Digital Solutions, Inc. v. Grupo Rontan Electro Metalurgica, S.A.*,
        2019 U.S. Dist. LEXIS 237105 (S.D. Fla. May 23, 2019)…………………24

*PHD@Western, LLC v. Rudolf Construction Partners, LLC*,
        2016 U.S. Dist. LEXIS 135858 (S.D. Fla. Sept. 30, 2016)…….26, 27, 28, 29

*H.E.R.O., Inc. v. Self*,
        2012 U.S. Dist. Lexis 69044 (S.D. Fla. May 17, 2012)……………………31

*Johns v. Taramita*, Inc.,
        132 F. Supp. 2d 1021 (S.D. Fla. 2001)…………………………….26, 27, 28

*Mastro v. Momot*,
    2009 U.S. Dist LEXIS 61726 (D. Az. 2009)…………………………………36

*Big Crane & Rigging Co. v. Agility Project Logistics, Inc.*,
    2020 U.S. Dist LEXIS 214084 (C.D. Cal. 2020)…………………………..37

*Guo v. Cyan, Inc.*,
    2018 U.S. Dist LEXIS 227744 C.D. Cal. 2018)…………………………...37

*Grinberg v. Carevoyant, Inc.*,
    2011 U.S. Dist. LEXIS 164614 (C.D. Cal. 2011)…………………………37

*Maxpower Semiconductor, Inc. v. Rohm Co.*,
    2021 U.S. Dist LEXIS 221362 (N.D. Cal. 2021)…………………………35

*Bencharsky v. Cotton Transmission Systems, LLC*,
    625 F. Supp 2d 872 (N.D. Cal. 2008)……………………………………...34

*Larson v. Speetjens*,
    2006 U.S. Dist LEXIS 87481 (N.D. Cal. 2006)…………………………36

*Homestake Lead Co. of Missouri v. Doe Run Resources Corp.*
    282 F. Supp. 2d 1131  (N.D. Cal. 2003)……………………………...34

*Smith v. Nummy*, 2009
    U.S. Dist. LEXIS 137876  (N.D. Ga. December 3, 2009)…………………32

*Bouchard v. Matson Money, Inc.*,
    2021 U.S. Dist. LEXIS 262211 (N.D. Ga. December 15, 2021)…………..32

**Florida Supreme Court**

*Garcia v. Federal Insurance Co.*,
    969 So.2d 288 (Fla. 2007) ……………………….…………………………21

*McRae v. J.D./M.D., Inc.*,
    511 So. 2d 540 (Fla. 1987) ……………………….………………………26, 27

vi

**Florida District Courts of Appeal**

*Super Cars of Miami, LLC v. Webster*,
    300 So. 3d 752 (Fla. 3d D.C.A. 2020) …………….…………………………23

*Intego Software, LLC v. Concept Development, Co.*,
    198 So. 3d 887 (Fla. 1st DCA 2016) …………….……………………..26

*Betzold v. Auto Club Group Insurance Co.*,
    124 So. 3d 402, 404 (Fla. 2nd D.C.A. 2013)………………………………25

*Beans v. Chohonis*,
    740 So.2d 65  (Fla. 3d D.C.A. 1999) …………….……………………..21

*Royal Oak Landings Homeowners Association, Inc. v. Pelletier*,
    620 So. 2d 786  (Fla. 4th D.C.A. 1993) …………….………………...23

**Statutes**

Fl. Stat. 48.193……………………………………………………2, 4, 6, 16, 17, 19

Fla. Stat. 48.161……………………………………………………………………….6

Fla. Stat. 48.181……………………………………………………………………….6

28 U.S.C.§1291…………………………………………………………...…..1

28 U.S.C. § 1404…………………………………………………...………..30

18 U.S.C. § 1332……………………………………………………...…………1

## STATEMENT OF JURISDICTION

The United States District Court originally had subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332 because Worth Group and Mr. Wilshire are both citizens of Florida and Ms. Morales is a citizen of California (i.e., the parties are from different states), and the amount in controversy exceeds $75,000.00 exclusive of interest and costs.

This Court has jurisdiction over this case pursuant to 18 U.S.C. § 1291 because the January 27, 2023 Order Accepting Magistrate Judge's Report and Recommendation and Dismissing Case [D.E. 17] is an appealable order.

## STATEMENT OF THE ISSUES

A.     In her arbitration contract, Ms. Morales agreed to file any claim for arbitration with Worth Group and/or Mr. Wilshire in Palm Beach County, Florida, and to arbitrate in Palm Beach County, Florida.  Ms. Morales breached this provision by filing her arbitration claim in California and arbitrating in California.  Florida's Long Arm Statute provides for personal jurisdiction when a person "Breach[es] a contract in this state by failing to perform acts required by the contract to be performed in this state." Fla. Stat. 48.193(1)(a)(7).

1.     Did the District Court commit error by failing to apply Fla Stat. 48.193 and determining that it lacked personal jurisdiction over Ms. Morales?

B.     Although the District Court did not address the Magistrate Judge's alternative recommendations to grant the Motion to Transfer, the District Court "accepted" the Report and Recommendation.  This situation leaves a potential ambiguity regarding whether the transfer issues remain alive in this appeal, even though it appears they should not be part of this appeal.  To the extent the transfer issues are part of this appeal, they would raise the following questions:

2.     By alternatively granting the transfer to the Southern District of California, did the District Court commit error because Worth Group and Mr.

Wilshire cannot bring their claim there (i.e., a district court in California lacks the power to order parties to arbitrate in Florida)?

3.    By alternatively granting the transfer to the Southern District of California, did the District Court abuse its discretion because Ms. Morales did not meet the high burden necessary to show her case is the rare instance when it is appropriate to disturb Worth Group's and Mr. Wilshire's choice of forum?

## STATEMENT OF THE CASE

In a written contract, Rosalyn Morales agreed that if she had a dispute with Worth Group, Inc. and Andrew Wilshire, she would file any arbitration claim with JAMS in Palm Beach County, Florida and arbitrate in Palm Beach County, Florida. Ms. Morales breached this agreement by failing to file her claim in Palm Beach County, Florida and failing to arbitrate in Palm Beach County, Florida. In turn, Worth Group and Mr. Wilshire filed a Petition in the District Court to compel arbitration in Florida.

The District Court held it lacked personal jurisdiction over Ms. Morales. According to the District Court, the forum selection clause in an arbitration agreement was insufficient to create personal jurisdiction under Florida's Long Arm statute. In this regard, the District Court erred by focusing on the forum selection clause and applying the wrong law.

Florida's Long Arm statute provides for specific jurisdiction over non-residents who "Breach[] a contract in this state by failing to perform acts required by the contract to be performed in this state." Fla. Stat. 48.193(1)(a)(7). There is no dispute that Ms. Morales breached her contract in Florida by refusing to file her arbitration claim in Florida and by failing to arbitrate in Florida.

Consequently, the Florida Long Arm statute's express language directs that the District Court had personal jurisdiction over Ms. Morales.

Although the District Court indicated that it did not address the Motion to Transfer and dismissed the case for lack of personal jurisdiction, the District Court "accepted" the Report and Recommendation. This situation raises a potential ambiguity as to whether the transfer issues are part of this appeal, even though it would appear that they are not. As a result, to the extent the decision on the motion to transfer is a part of this appeal, the decision is also erroneous.

First, transfer to California is inappropriate because Worth Group and Mr. Wilshire cannot bring their claim there. A California district court cannot compel Mr. Morales to arbitrate in Florida. *See Continental Grain Co. v. Dant & Russell, Inc.*, 118 F. 2d 967, 968-969 (9th Cir. 1941).

Second, Ms. Morales did not meet the high burden necessary to show her case is the rare instance when it is appropriate to disturb Worth Group's and Mr. Wilshire's choice of forum. To be sure, Ms. Morales provided no evidence of hardship, and she agreed in her contract that Palm Beach County, Florida would be a "mutually and reasonably convenient place for any arbitration hearing."

5

### Course of Proceedings and Disposition Below

On September 6, 2022, Worth Group and Andrew Wilshire filed their petition in the District Court.  They asked for the following relief:

(a) To compel Rosalyn Morales to submit her arbitration claim to JAMS in Palm Beach County, Florida in accord with the parties' written arbitration agreement; or

(b) To appoint an arbitrator with the qualifications set forth in the parties' Arbitration Agreement and direct the parties to arbitrate in accord with their Agreement; and

(c) In either case, to stay the arbitration pending in California.

(D.E. 1).

On October 4, 2022, Worth Group and Mr. Wilshire filed a Motion to Deem Ms. Morales Served Pursuant to Florida Statute 48.161 and 48.181. (D.E. 4).  On October 11, 2022, Worth Group and Mr. Wilshire filed a notice to withdraw the motion to deem Ms. Morales served and to notify the District Court that the parties had stipulated Ms. Morales would respond to the Petition on or before October 28, 2022. (D.E. 6).

On March 5, 2020, Ms. Morales filed her Motion to Transfer or Dismiss. (D.E. 7).  Ms. Morales argued the District Court should either transfer the case to the Southern District of California, or dismiss the case because the Court lacked personal jurisdiction over Ms. Morales. (D.E. 7).  Between the filing of Worth Group's and Mr. Wilshire's response, (D.E. 8), and Ms. Morales' reply (D.E. 10),

6

the District Court referred the matter to a Magistrate Judge for a Report and Recommendation. (D.E. 9).

On November 30, 2023, the Magistrate Judge held an oral argument on the Motion to Transfer or Dismiss, (D.E. 12), and on December 2, 2022, the Magistrate Judge issued a Report and Recommendation. (D.E. 13).  The Magistrate Judge recommended the District Court dismiss the case for lack of personal jurisdiction. The Magistrate Judge also recommended that, even if personal jurisdiction existed, the District Court should transfer the case to the Southern District of California.

On December 9, 2022, Worth Group and Mr. Wilshire timely filed objections to the Report and Recommendation. (D.E. 14), and on December 22, 2022, Ms. Morales filed her response. (D.E. 15).

On January 27, 2023, the Court "accepted" the Report and Recommendation and dismissed the Petition "for lack of personal jurisdiction." (D.E. 17).  The District Court did "not address [the Magistrate Judge's] alternative recommendation to transfer [the] case to the Southern District of California."

On January 31, 2023, Worth Group and Mr. Wilshire timely filed their Notice of Appeal. (D.E. 18).

## STATEMENT OF THE FACTS

I.    Ms. Morales' Contract With Worth Group.

Ms. Morales signed a Loan, Security and Storage Agreement with Worth Group.  Pursuant to the Agreement, Worth Group loaned Ms. Morales funds to finance her precious metals purchases from First National Bullion, LLC, a separate and independent company.  *See* Petition, D.E. 1, ¶ 14-15; Ex. 1 (First National Bullion Contract), and 2 (Worth Group Contract).

In her contract, Ms. Morales specifically affirmed and acknowledged that she was legally competent to enter into her agreement, and that she had carefully read and understood the contract.  The contract says:

**THE       UNDERSIGNED       AFFIRMS       MY       OR       ITS UNDERSTANDINGS AND ACKNOWLEDGES THAT:**
I am of legal age and/or legally competent to enter into this Agreement.
* * *
I have determined in my own mind that I am financially, intellectually, and emotionally suitable to enter into the transactions which are the subject of this Agreement and able to accept the risks and to meet the financial commitments being made.
* * *
I have carefully read and understand the foregoing. …

Petition, D.E.1, Ex. 2, pg. 9-10 (a), (f).

The Worth Group contract included an arbitration clause in which the parties agreed to file any dispute in Palm Beach County, Florida with JAMS.  The relevant portion of the agreement says:

**Arbitration of Claims.**  The parties agree that any and all disputes, claims or controversies arising out of or relating to any transaction between or among them or to the breach, termination, enforcement, interpretation, validity or alleged unconscionability of any part of this Agreement shall be subject to and governed by the Federal Arbitration Act and shall be submitted to final and binding arbitration before JAMS, or its successor, in Palm Beach County, Florida.

Petition, D.E 1, Ex. 2 ¶ 35.

Through a separate venue provision, the parties agreed that any arbitration would occur in Palm Beach County, Florida, and that location would be mutually and reasonably convenient.  The relevant portions of the Worth Agreement say:

**Location of any Dispute Resolution Concerning this Florida Agreement is Florida.  You agree that for all purposes you have entered into this Agreement and the making of this Agreement has occurred in Palm Beach County, Florida, notwithstanding any events that may occur outside Palm Beach County, including the manner, timing or location of the delivery or receipt of the acceptance of this Agreement by any party hereto.  You also agree that the following events, among others, occurred in Palm Beach County, Florida: the negotiation of this contract will have taken place and have been completed in Palm Beach County, Florida; the contract will be executed in Palm Beach County, Florida; WORTH is located in Palm Beach County, Florida; all deposits and payments made by Borrower will be delivered to and paid in Palm Beach County, Florida; all loans made by Worth will be made from and paid in Palm Beach County, Florida; and the written confirmation of each transaction and all statements of account will be generated in and transmitted from Palm Beach County, Florida.**

**You and WORTH agree that Palm Beach County, Florida is a mutually and reasonably convenient place for any arbitration hearing concerning disputes relating to your transactions with WORTH or to this Agreement and that all arbitration proceedings subject to this Agreement shall occur before the Judicial**

**Arbitration and Mediation Society ("JAMS") in Palm Beach County, Florida.**

Petition, D.E 1, ¶ 16 (emphasis in original).

Worth Group and Mr. Wilshire made detailed jurisdictional allegations in the Petition. They claimed the District Court has diversity subject matter jurisdiction because the parties are from different states and the claim involves more than $75,000. They also claimed the District Court has personal jurisdiction over Ms. Morales because she breached the contract in Florida by refusing to file her arbitration petition in Florida. Worth Group and Mr. Wilshire further alleged the following events occurred in Palm Beach County, Florida: (a) the parties negotiated, entered into, executed and made the contract; (b) Ms. Morales delivered and paid all deposits and payments; and (c) Worth made all loans, and issued all trade confirmations and statements of account. *See* Petition, D.E. 1, ¶¶ 10, 12, 13. In particular, Worth Group and Mr. Wilshire alleged:

> In May 2022, instead of submitting a claim against Worth Group before JAMS in Palm Beach County, Florida, Ms. Morales filed a First Amended Statement of Claims with the Los Angeles office of JAMS and requested leave to include Worth Group and Andrew Wilshire as respondents. In this way, Ms. Morales breached the Worth Agreement because she did not submit her claim against Worth Group to JAMS in Palm Beach County, Florida.

Petition, D.E. 1, ¶ 19.

Worth Group and Mr. Wilshire also alleged Ms. Morales breached her arbitration agreement by arbitrating in California rather than Florida:

> Given these rulings, Ms. Morales has continued to breach her
> arbitration agreement by refusing to arbitrate: (a) with a retired Florida
> federal or state court judge; and (b) in Palm Beach County, Florida.

Petition, D.E. 1, ¶ 4. *See also* ¶ 80 ("Ms. Morales breached her arbitration
agreement by: (a) failing to submit her claims to JAMS in Palm Beach County,
Florida; (b) insisting on proceeding with an arbitrator who is not a retired Florida
federal or state court judge; and (c) insisting on arbitrating in California.").

## STANDARD OF REVIEW

The Court reviews *de novo* a District Court's decision to dismiss a case for lack of personal jurisdiction. *See Davis v. LG Chem, Ltd.*, 849 Fed. Appx 855, 857 (11th Cir. 2021).

To the extent the decision on the motion to transfer is a part of this appeal, the Court reviews *de novo* a District Court's application of the law regarding a dismissal under 28 U.S.C. §1404(a). The Court reviews for an abuse of discretion a District Court's factual determinations regarding a dismissal under 28 U.S.C. §1404(a).

## SUMMARY OF THE ARGUMENT

The District Court committed error when it determined it lacked personal jurisdiction over Ms. Morales.  In addition, to the extent the issue remains alive in this appeal, the District Court erred by alternatively ruling the case should be transferred to the Southern District of California.

The District Court erroneously ruled it had no personal jurisdiction over Ms. Morales because the "venue clause in the Worth Group contract is not by itself sufficient to give this Court personal jurisdiction over [Ms. Morales] under Section 48.193(1)(a)(7) of Florida's long-arm statute." *See* Order, D.E. 17, pg. 6.  In this way, the District Court overlooked the undisputed fact that Ms. Morales breached her arbitration contract in Florida by failing to file her arbitration claim in Florida and by failing to arbitrate in Florida.

Under the Florida Long Arm statute, a defendant can trigger personal jurisdiction by: "Breaching a contract in [Florida] by failing to perform acts required by the contract to be performed [Florida]." *See* Fla. Stat. 48.193(1)(a)(7).

Ms. Morales has never contested that: (1) she agreed to file her arbitration claim in Florida; (2) she agreed to arbitrate in Florida; (3) she filed her arbitration claim in California; and (4) she is pursuing arbitration in California.  Moreover, the District Court acknowledged Ms. Morales signed an arbitration contract "requiring [Ms. Morales] to submit any claim against Worth Group to JAMS arbitration in Palm

13

Beach County, Florida… ."  The District Court also acknowledged Ms. Morales had actually filed her arbitration claim in California and was pursuing arbitration in California. *See* D.E. 17, pg. 2, 3.

As a result, the only evidence before the Court is that Ms. Morales breached the arbitration contract in Florida by failing to file her arbitration claim in Florida and by failing to arbitrate in Florida.

Under the circumstances, Florida's Long Arm Statute clearly provides personal jurisdiction.

The District Court's opinion does not address, affirm, or rely on the Magistrate Judge's Motion to Transfer rationale.   At the same time, the District Court "Accepted" the Report and Recommendation.   This situation creates a potential ambiguity as to whether the transfer issue is alive for the purposes of this appeal.  To the extent this issue remains part of this appeal, Worth Group and Mr. Wilshire address it.

The Magistrate Judge noted that even if personal jurisdiction existed, transfer under 28 U.S.C. §1404(a) was appropriate because: (1) Worth Group and Mr. Wilshire could bring their case in California; and (2) the circumstances justified the transfer.

In fact, Worth Group and Mr. Wilshire could not bring this case in California because a California court would not have the power to compel arbitration in Florida

14

(which is the relief Worth Group and Mr. Wilshire are seeking). *See Ansari v. Qwest Communications*, 414 F.3d 1214 (10th Cir. 2005); *Merrill Lynch, Pierce, Fenner & Smith v. Laue*r, 49 F. 3d 323 (7th Cir. 1995); *Inland Bulk Transfer Co. v. Cummins Engine Co.*, 332 F.3d 1007, 1018 (6th Cir. 2003); *Port Erie Plastics, Inc. Uptown Nails, LLC.*, 173 Fed.Appx. 123, 127 (3d Cir. 2006).

Moreover, when conducting the transfer analysis, the Magistrate Judge abused his discretion by accepting as facts assertions made by counsel that were not in the record. As a result, the Magistrate Judge misapplied the applicable law to the transfer analysis.

## ARGUMENT AND CITATIONS OF AUTHORITY

I.    The District Court Incorrectly Determined There Is No Personal Jurisdiction Over Ms. Morales.

The District Court erroneously ruled it had no personal jurisdiction over Ms. Morales because the "venue clause in the Worth Group contract is not by itself sufficient to give this Court personal jurisdiction over [Ms. Morales] under Section 48.193(1)(a)(7) of Florida's long-arm statute." *See* Order, D.E. 17, pg. 6.  In this way, the District Court overlooked the undisputed fact that Ms. Morales breached her arbitration contract in Florida by failing to file her arbitration claim in Florida and by failing to arbitrate in Florida.

This breach in Florida created personal jurisdiction under Florida's Long Arm Statute.

A.    Personal Jurisdiction Law.

To establish personal jurisdiction over a non-resident defendant, a plaintiff bears the initial burden of alleging sufficient facts in the complaint to make out a prima facie case for jurisdiction.  If the defendant submits affidavits which are contrary to the allegations (and the affidavits do not contain purely conclusory statements), the burden returns to the plaintiff to produce evidence supporting personal jurisdiction.  When the affidavits present a conflict, the district court must construe all reasonable inferences in the plaintiff's favor. *See Louis Vuitton*

16

*Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013); *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006).

When a Florida federal court exercising diversity jurisdiction considers a motion to dismiss for lack of personal jurisdiction under Fed.R.Civ.P. 12(b)(2), the court takes a two-step approach.  First, the district court must determine whether Florida's Long Arm statute provides jurisdiction.  Second, the district court must determine that exercising jurisdiction is consistent with the Fourteenth Amendment's Due Process clause. *See Carmouche v. Tamboriee Management, Inc.*, 798 F.3d 1201, 1203 (11th Cir. 2015).

The Florida Long Arm statute provides for specific personal jurisdiction when a plaintiff sues a defendant based on particular acts that the defendant conducted within Florida.  One way a defendant can trigger personal jurisdiction is by: "Breaching a contract in [Florida] by failing to perform acts required by the contract to be performed [Florida]." *See* Fla. Stat. 48.193(1)(a)(7).

B.  <u>Worth Group and Mr. Wilshire Alleged Ms. Morales Breached A Contract in Florida</u>.

In the Petition, Worth Group and Mr. Wilshire alleged Ms. Morales breached the Worth Group contract by failing to file her arbitration petition in Palm Beach County, Florida. *See* Petition, D.E. 1, ¶ 19 ("In this way, Ms. Morales breached the

Worth Agreement because she did not submit her claim against Worth Group to JAMS in Palm Beach County, Florida.").

Worth Group and Mr. Wilshire also alleged Ms. Morales breached the Worth Group contract by failing to arbitrate in Palm Beach County, Florida. *See* Petition, D.E. 1, ¶ 4 ("Given these rulings, Ms. Morales has continued to breach her arbitration agreement by refusing to arbitrate: (a) with a retired Florida federal or state court judge; and (b) in Palm Beach County, Florida."); ¶ 80 ("Ms. Morales breached her arbitration agreement by: (a) failing to submit her claims to JAMS in Palm Beach County, Florida; (b) insisting on proceeding with an arbitrator who is not a retired Florida federal or state court judge; and (c) insisting on arbitrating in California.").

Ms. Morales never contested that she agreed to file her arbitration claim in Florida and filed in California instead, or that she agreed to arbitrate in Florida and is pursuing arbitration in California instead. Moreover, the District Court acknowledged Ms. Morales signed an arbitration contract "requiring [Ms. Morales] to submit any claim against Worth Group to JAMS arbitration in Palm Beach County, Florida… ." The District Court also acknowledged Ms. Morales had actually filed her arbitration claim in California and was pursuing arbitration in California. *See* D.E. 17, pg. 2, 3.

As a result, the only evidence before the Court is that Ms. Morales breached the arbitration contract in Florida by failing to file her arbitration claim in Florida and by failing to arbitrate in Florida.

Under the circumstances, Florida's Long Arm Statute clearly provides personal jurisdiction. *See* Fla. Stat. 48.193(1)(a)(7) ("A person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from any of the following acts: ... Breaching a contract in this state by failing to perform acts required by the contract to be performed in this state.").

C. <u>The Worth Group Contract's Plain Language Supports The Breach Allegation</u>.

The contract's plain language supports this point.  First, under the contract, Ms. Morales "agree[d] that any and all disputes, claims, or controversies … shall be submitted to final and binding arbitration before JAMS, or its successor, in Palm Beach County, Florida. *See* Petition, D.E. 1, ¶ 19; Ex. 2, ¶ 35.  In context, this term clearly means the parties agreed to file their claims with JAMS in Palm Beach County, Florida.

Second, Ms. Morales "agree[d] … **that all arbitration proceedings subject to this Agreement shall occur before the Judicial Arbitration and Mediation Society ("JAMS") in Palm Beach County, Florida.** *See* Petition, D.E. 1, ¶ 16 (emphasis in original).

    1.  <u>The Obligation To File In Palm Beach County, Florida.</u>

Several dictionaries confirm that in this context, "submit" means to file the claim with JAMS.  According to the Cambridge Dictionary, submit means "to give or offer something for a decision to be made by others:



*See* Cambridge Dictionary, https://dictionary.cambridge.org/us/dictionary/english/submit.

Black's Law Dictionary provides a similar definition: "To propound; as an advocate submits a proposition for the approval of the court.  **Applied to a**

**controversy, it means to place it before a tribunal for determination."** *See* Black's Law Dictionary, https://thelawdictionary.org/?s=submit (emphasis added).

Along these lines, Dictionary.com explains that when used with an object, submit means "to present for the approval, consideration, or decision or another or others: *to submit a plan; to submit an application*. *See* Dictionary.com, https://www.dictionary.com/browse/submit (emphasis in original). The Merriam Webster dictionary defines submit as follows: "to present or propose to another for review, consideration or decision *also*; to deliver formally. *See* https://www.merriam-webster.com/dictionary/submit.

This Court should honor these definitions because the contract's language and plain meaning are the best evidence of the parties' intent. *Beans v. Chohonis*, 740 So.2d 65, 67 (Fla. 3d D.C.A. 1999) ("... the trial court departed from the principle of contract interpretation which requires that the words used by the parties must be given their plain and ordinary meaning. One looks to the dictionary for the plain and ordinary meaning of words.") (internal citations omitted); *cf Garcia v. Federal Insurance Co.*, 969 So.2d 288, 291-292 (Fla. 2007) ("When interpreting insurance contracts, we may consult references commonly relied upon to supply the accepted meaning of words").

Read as a whole, the Worth Group contract requires the same conclusion.

21

The Worth Group Contract contains a venue clause which is separate and distinct from the clause that required Ms. Morales to file her claims in Palm Beach County. This parties purposely meant to identify where to conduct the arbitration proceedings in addition to directing where the claim would be filed.

Specifically, the venue clause clearly and unambiguously, and in bold letters, directs that the only permissible venue for arbitration is Palm Beach County, Florida: "**Location of any Dispute Resolution Concerning this Florida Agreement is Florida**." The contract also says: "**You and WORTH agree that … all arbitration proceedings subject to this Agreement shall occur before the Judicial Arbitration and Mediation Society ("JAMS") in Palm Beach County, Florida.**" The full contract provision says:

> **Location of any Dispute Resolution Concerning this Florida Agreement is Florida. You agree that for all purposes you have entered into this Agreement and the making of this Agreement has occurred in Palm Beach County, Florida, notwithstanding any events that may occur outside Palm Beach County, including the manner, timing or location of the delivery or receipt of the acceptance of this Agreement by any party hereto. You also agree that the following events, among others, occurred in Palm Beach County, Florida: the negotiation of this contract will have taken place and have been completed in Palm Beach County, Florida; the contract will be executed in Palm Beach County, Florida; WORTH is located in Palm Beach County, Florida; all deposits and payments made by Borrower will be delivered to and paid in Palm Beach County, Florida; all loans made by Worth will be made from and paid in Palm Beach County, Florida; and the written confirmation of each transaction and all statements of account will be generated in and transmitted from Palm Beach County, Florida.**

22

> **You and WORTH agree that Palm Beach County, Florida is a mutually and reasonably convenient place for any arbitration hearing concerning disputes relating to your transactions with WORTH or to this Agreement and that all arbitration proceedings subject to this Agreement shall occur before the Judicial Arbitration and Mediation Society ("JAMS") in Palm Beach County, Florida.**

Petition, D.E 1, ¶ 16, Ex. 2, 34-35 (emphasis in original).

Under Florida law, courts must consider a contract as an integrated document, not piecemeal. A cardinal principle of contract interpretation is that the contract must be interpreted in a manner that does not render any provision of the contract meaningless. *See Super Cars of Miami, LLC v. Webster*, 300 So. 3d 752, 755 (Fla. 3d D.C.A. 2020) ("Consequently, in interpreting a contract, it must be assumed that each clause has some purpose and the court should interpret the contract in such a way as to give effect to every provision… ."); *Royal Oak Landings Homeowners Association, Inc. v. Pelletier*, 620 So. 2d 786, 788 (Fla. 4th D.C.A. 1993) ("The language being construed should be read in common with the other provisions of the contract.").

The fact that the Worth Group contract contains a clause requiring Ms. Morales to submit her claim to JAMS in Palm Bach County, Florida and another clause requiring the arbitration to occur in Palm Beach County, Florida demonstrates the parties purposely meant to keep these concepts distinct. In short, if the word "submit" only referred to venue, there would be no separate venue clause.

23

2.  The Obligation To Arbitrate in Palm Beach County, Florida.

Further, the arbitration agreement clause also required Ms. Morales to conduct any arbitration proceedings in Florida. Consequently, she also breached the arbitration agreement in this state, by failing to arbitrate in this state.

D. The Case Law Supports Personal Jurisdiction.

Apart from complying with the specific statutory and contract language, the personal jurisdiction allegation is consistent with the applicable case law. *Global Digital Solutions, Inc. v. Grupo Rontan Electro Metalurgica, S.A.*, 2019 U.S. Dist. LEXIS 237105 (S.D. Fla. May 23, 2019), explains the principle.

Global Digital signed a share purchase agreement to acquire the entire ownership of Grupo Rontan. The parties agreed that only one act in the contract would be performed in Boca, Raton, Florida: the closing of the agreement. After Grupo Rontan failed to close the transaction in Boca Raton, Global Digital sued for breach of the share purchase agreement in the Southern District of Florida. *See id.* at 5-6. Judge Middlebrooks found the breach created personal jurisdiction. He wrote:

> The only performance required under the SPA that was to take place in Florida was the closing of the agreement, which was to take place in Boca Raton, Florida, "or at such other place agreed to in writing by the Parties." Neither Party indicates that they agreed to another location. Defendants allege that the shares could only be transferred in Brazil and required registration in Brazil, and that therefore, the transaction could not close in Florida. Plaintiff disagrees on this point, but in any event, the closing in Boca Raton is a requirement of the SPA that appears to be a duty independent and separate from the transfer of shares. (Alternatively, if Defendants are correct that the closing is inseparable

24

from the transfer of shares, it is unclear why Defendants agreed to perform a duty prohibited by Brazilian law.)

Because Defendants' conduct falls within §48.193(1)(a)(7), the first prong of the personal jurisdiction inquiry is met, and the Court must address the due process prong.

*Id.*

*Betzold v. Auto Club Group Insurance Co.*, 124 So. 3d 402, 404 (Fla. 2nd D.C.A. 2013), provides another example. A Michigan woman died in an automobile accident in Tampa, and her personal representative sued her Michigan insurance company in Florida for bad faith. The Michigan insurance company did not issue policies or have other operations in Florida. The company only failed to deliver certain affidavits in Florida. The Court held the insurance company was subject to personal jurisdiction in Florida because failing to deliver the affidavits constituted a breach of a contract in Florida. The Court explained:

> Betzoldt's bad-faith claim comprises two distinct components: (1) failure to advise her of the substance of the settlement offer, and (2) failure to procure the necessary affidavit, the failure of which triggered the rejection of the offer to settle for policy limits. The first claim, failure to advise Betzoldt of the substance of the offer of settlement, bears no relationship to Florida. Auto Club could advise Betzoldt of such an offer in Michigan, and from Michigan. The agreement to advise her did not require any performance in Florida. However, on the other hand, the failure "to procure a statement under oath from her or her 'insurance agents disclaiming the existence of any additional known insurers" could not happen entirely outside Florida. Auto Club points out that the complaint merely discusses *procurement* of the affidavit, and not its delivery to the attorney, who is in Florida. Of course, it is only the delivery that has a nexus to Florida, and not the procurement. However, "[w]e must . . . assume that all of the facts

25

alleged are true and *draw all reasonable inferences in favor of the pleader*." Here, the logical inference is that if Auto Club never *procured* the affidavit it needed, it never *delivered* that affidavit to the attorney in Florida. The delivery of the affidavit was required to occur in Florida. Assuming the facts as true, therefore, there was a breach based on a "fail[ure] to perform acts required by the contract to be performed in" Florida. Because we determine that the allegations of the complaint bring the cause within the ambit of the long-arm statute, we must next determine whether Auto Club has minimum contacts with Florida.

*Id.* at 404. *See also Intego Software, LLC v. Concept Development, Co.*, 198 So. 3d 887 (Fla. 1st DCA 2016) (personal jurisdiction existed when the complaint alleged the defendant breached a contract by failing to provide its prototypes and end product in Florida).

The District Court erroneously failed to apply this authority.

Instead, relying on *McRae v. J.D./M.D., Inc.*, 511 So. 2d 540 (Fla. 1987), *Johns v. Taramita*, Inc., 132 F. Supp. 2d 1021 (S.D. Fla. 2001), and *PHD@Western, LLC v. Rudolf Construction Partners, LLC*, 2016 U.S. Dist. LEXIS 135858 (S.D. Fla. Sept. 30, 2016), the District Judge held a venue clause by itself cannot create personal jurisdiction.

This ruling misses the point, though. The district court had personal jurisdiction over Ms. Morales because Ms. Morales breached a contract in Florida (by failing to file for arbitration and failing to arbitrate in Florida), not because there is a venue clause in her arbitration contract.

In *McRae*, the question certified demonstrates the difference. The Court considered: "Can a Florida court exercise in personam jurisdiction over the objection

of a non-resident **who has done none of the acts specified in** Florida's long arm statute… ." *See McRae*, 511 So. 2d at 541.  The Court noted: "In short, Florida has absolutely no connection with this transaction; the contract was neither negotiated here no was it to be even partly performed here." *Id.* at 543.  Consequently, the Court answered: "In the case before us, it unequivocally appears that there is no basis for Florida to exercise jurisdiction over the defendant in this dispute." *Id* at 543.

Ms. Morales' situation is entirely different.  As the District Court acknowledged, Ms. Morales' arbitration agreement required her to perform two acts in Florida: filing the arbitration claim and conducting the arbitration.  There can be no dispute she breached these provisions because she filed for arbitration in California, and she is currently arbitrating in California.  In this manner, she breached a contract in Florida, she unequivocally placed herself within the Florida Long Arm statute, and she subjected herself to the District Court's jurisdiction.

Similarly, *Johns* and *PHD@Western* do not apply to Ms. Morales' situation.

In *Johns v. Taramita*, Inc., 132 F. Supp. 2d 1021 (S.D. Fla. 2001), the plaintiff attempted to justify personal jurisdiction based on a choice of law/ attorney fee clause in a contract.  The clause said: "If the party successfully breaches this arbitration provision, jurisdiction in any subsequent suit will be limited to Florida law and Florida law will apply with the prevailing party to recover its costs and attorneys' fees."

27

The *Johns* Court rightly determined this clause did not trigger any of the provisions in the Florida Long Arm Statute because it did not require any action in Florida.  Specifically, there was no requirement to file or conduct the arbitration proceeding in Florida, and a proceeding anywhere else in the world could fully comply with the term so long as the fact finder applied Florida law.  In sum, there was no breach in Florida (and no breach in Florida could be alleged).

Similarly, in *PHD@Western, LLC v. Rudolf Construction Partners, LLC*, 2016 U.S. Dist. LEXIS 135858 (S.D. Fla. Sept. 30, 2016), the parties executed a permissive filing and forum clause that allowed for arbitration in Florida or North Carolina: "All claims, disputes, and other matters in question between Contractor and Owner arising out of, or relating to, the Contract Documents or the breach therefore, shall be determined by arbitration which the parties agree **shall be commenced and pursued solely in Palm Beach County Florida, the location of the Owners corporate office, or WAKE County NORTH CAROLINA, at Owner's option**."

The *PHD@Western* Court properly agreed with the Florida Supreme Court's holding in *McRae v. J.D./M.D., Inc.*, 511 So. 2d 540 (Fla. 1987), which said: "First, we reject the suggestion that a defendant waives his due process right to contest the jurisdictional issue merely by signing a contract **containing a permissive jurisdiction clause**." *Id*. at 6-7.

28

Again, unlike the Worth Group contract (which requires Ms. Morales to file her arbitration claim and conduct her arbitration only in Florida), the *PHD@Western* Agreement allowed the parties to file or pursue the arbitration either in Florida or North Carolina.  As a result, refusing to file and refusing to arbitrate in Florida was not a breach of the *PHD@Western* agreement.  Without a Florida breach, there was no personal jurisdiction because the permissive forum clause could not trigger the Florida Long Arm Statute (which requires a breach in Florida).

In the end, as the District Court acknowledged in its ruling, Ms. Morales agreed to file her arbitration claim only in Palm Beach County, Florida, and she agreed to arbitrate only in Palm Beach County, Florida.  She failed to do either.  In this manner, Ms. Morales breached the Worth Group contract by failing to perform an act in Florida, and Ms. Morales created specific personal jurisdiction under the Florida Long Arm Statute.

The District Court erred by not following this rule.

II.    <u>To The Extent The Issue Remains Alive, The District Judge Erred By Granting the Motion to Transfer</u>.

The District Court's opinion does not affirm or rely on the Magistrate Judge's Motion to Transfer rationale.  At the same time, the District Court "Accepted" the Report and Recommendation.  This situation leaves a potential ambiguity regarding whether the transfer issues remain alive in this appeal, even though it appears they

should not be part of this appeal.  To the extent this issue remains live in this appeal, Worth Group and Mr. Wilshire address it.

The Magistrate Judge noted that even if personal jurisdiction existed, transfer under 28 U.S.C. §1404(a) was appropriate because: (1) Worth Group and Mr. Wilshire could bring their case in California; and (2) the circumstances justified the transfer.

In fact, Worth Group and Mr. Wilshire could not bring this case in California because a California court would not have the power to compel arbitration in Florida (which is the relief Worth Group and Mr. Wilshire are seeking).  Moreover, when conducting the transfer analysis, the Magistrate Judge abused his discretion by accepting as facts assertions made by counsel that were not in the record.  As a result, the Magistrate Judge misapplied the applicable law to the transfer analysis.

A.  <u>Federal Transfer Law</u>.

Under 28 U.S.C. §1404(a), a district court may transfer a civil action to any district where the plaintiffs could have been brought the action in the first instance. *See Van Dusen v. Barrack*, 376 U.S. 612 (1964) ("This transfer power is, however, expressly limited by the final clause of § 1404(a) restricting transfer to those federal districts in which the action 'might have been brought.'").

If a party can meet this threshold hurdle, it must still prove the following factors justify the transfer: (1) the convenience of the witnesses; (2) the location of

relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances. *See Manuel v. Converges Corp.*, 430 F. 3d 1132, 1135 n.1  (11th Cir. 2005).

The burden to justify a transfer is high, though.  This Court has explained courts should be restrictive in in transferring actions because "the plaintiff's choice of forum should not be disturbed unless the movant can show that it is clearly outweighed by other considerations." *See Robinson v. Giarmarco & Bill*, 74 F. 3d 253, 260 (11th Cir. 1996) (quoting Howell v. *Tanner*, 650 F.2d 610, 616 (5th Cir,. Unit B 1981), *cert.* denied, 456 U.S. 918, 72 (1982) (internal quotations omitted). Accordingly, in order to overcome the presumption in favor of Plaintiff's choice of forum, the movant must show the balance of convenience is "strongly in favor of the defendant," and this should happen "rarely." *See SMRE Racks, Inc. Sistemas Mecánicos Para Electronica,* S.A., 382 F.3d 1097, 1101 (11th Cir. 2004); H.E.R.O*., Inc. v. Self*, 2012 U.S. Dist. Lexis 69044 (S.D. Fla. May 17, 2012).

B.  <u>This Case Cannot Be Brought in California</u>.

Based on a mistaken reading of a Ninth Circuit Case, *Textile Unlimited v. A..bmhand Co.*, 240 F. 3d 781 (9th Cir. 2001), the Magistrate Judge erroneously ruled Worth Group and Mr. Wilshire could bring this case in California.  In fact, the federal Courts in California would not have the authority to provide the relief that Worth Group and Mr. Wilshire are seeking: an order directing the parties to arbitrate in Florida.

Although this Court has not ruled on this issue, the majority of circuit courts and the other district courts in this circuit have ruled that district courts cannot enforce arbitration venue clauses that require arbitration outside of their districts. *See Ansari v. Qwest Communications*, 414 F.3d 1214 (10th Cir. 2005) ("… a third approach taken by a majority of courts is the correct approach.  This majority view holds that where the parties agreed to arbitrate in a particular forum only a district court in that forum has authority to compel arbitration under §4."); *Bouchard v. Matson Money, Inc.*, 2021 U.S. Dist. LEXIS 262211, pg. 15-16 (N.D. Ga. December 15, 2021) ("although the Eleventh Circuit has not yet addressed this issue, most circuits have determined that when a contractual arbitration clause includes a forum or venue selection clause, a district court outside that forum cannot issue a §4 order compelling arbitration in the designated forum—only a court *in* that forum can do so."); *Smith v. Nummy*, 2009 U.S. Dist. LEXIS 137876, pg. 6 (N.D. Ga. December

3, 2009) ("While the Eleventh Circuit has not ruled on this issue, the Seventh Circuit has stated that 'where the arbitration agreement contains a forum selection clause, only the district court in that forum can issue a §4 order compelling arbitration. Otherwise, the clause of §4 mandating that the arbitration and the order to compel issue from the same district would be meaningless.'").

These courts are correct.

Under §4 of the Federal Arbitration Act, Palm Beach County, Florida is the only appropriate venue for this action because Worth Group and Mr. Wilshire seek to compel arbitration in Palm Beach County and the Worth Agreement requires arbitration in Palm Beach County. *Merrill Lynch, Pierce, Fenner & Smith v. Laue*r, 49 F. 3d 323 (7th Cir. 1995), explains:

> [Section 4] clearly requires a geographic link between the site of the arbitration and the district which, by compelling arbitration or directing its scope, exercises preliminary control. The statute is perhaps awkwardly worded for present purposes in that the mandatory language ties the location of arbitration to the district in which the motion to compel is brought. Nonetheless, the inescapable logical import in the present situation, in which the location of arbitration is pre-ordained, is that the statute limits the fora in which §4 motions can be brought.

*Id.* at 327. *See also Continental Casualty Company v. AmericanNational Insurance*, 417 F. 3d 727 (7th Cir. 2005).

Other circuits have come to the same conclusion. *See, e.g.*, *Inland Bulk Transfer Co. v. Cummins Engine Co.*, 332 F.3d 1007, 1018 (6th Cir. 2003) ("the Federal Arbitration Act prevents federal courts from compelling arbitration outside

33

of their own district."); *Port Erie Plastics, Inc. Uptown Nails, LLC.*, 173 Fed.Appx. 123, 127 (3d Cir. 2006) ("under the language of §4, a district court lacks authority to order arbitration to proceed outside its own judicial district.").

The Magistrate Judge erred by concluding that *Textile Unlimited v. A..bmhand Co.*, 240 F. 3d 781 (9th Cir. 2001), allows a district court in the Ninth Circuit to compel arbitration in Florida.

Consistent with the cases cited above, district courts in the Ninth Circuit simply have no power to enforce a venue clause that requires arbitration in another district. *See Continental Grain Co. v. Dant & Russell, Inc.*, 118 F. 2d 967, 968-969 (9th Cir. 1941). As Judge Illston explained in *Bencharsky v. Cotton Transmission Systems, LLC*, 625 F. Supp 2d 872 (N.D. Cal. 2008):

> … The licensing agreement provides that arbitration must be carried out in Pennsylvania. The Court need not reach the question of whether this provision is valid because this Court has no jurisdiction to compel arbitration in Pennsylvania. The Ninth Circuit's 1941 decision in *Cont'l Grain Co. v. Dant & Russell* remains the controlling authority on where a district court can compel arbitration. 118 F.2d 967, 968-69 (9th Cir. 1941); *see also Sovak v. Chugai Pharm. Co.*, 280 F.3d 1266, 1271 n.1 (9th Cir. 2002) (comparing the Ninth Circuit position with a Fifth Circuit holding in *Dupuy-Busching Gen. Agency v. Ambassador Ins. Co.*, 524 F.2d 1275, 1276-78 (5th Cir. 1975)). "*Continental Grain* interprets section 4 of the FAA as limiting courts to ordering arbitration within the district in which the suit was filed. The Ninth Circuit has indirectly confirmed this interpretation [], stating that 'by its terms, § 4 only confines the *arbitration* to the district in which the petition to compel is filed.'" *Homestake Lead Co. of Missouri v. Doe Run Resources Corp*. 282 F. Supp. 2d 1131, 1143-44 (N.D. Cal. 2003) (citing *Textile Unlimited, Inc. v. A..BMH and Co., Inc*., 240 F.3d 781, 785 (9th Cir.2001) (emphasis in original)). The Court therefore finds

34

that it is precluded from ordering arbitration in the contractually-designated forum of Pennsylvania.

*Id.* at 883-884.

Given this limitation, Worth Group and Mr. Wilshire could not bring this petition in California because the district court could not compel Ms. Morales to arbitrate in Florida as she agreed in the contract.

*Textile Unlimited v. A..bmhand Co.*, 240 F. 3d 781 (9th Cir. 2001), does not contradict this rule. In fact, *Textile* is not relevant to this case because the *Textile* plaintiffs brought a motion to enjoin arbitration, not to compel arbitration. Under the circumstances, the *Textile* Court only held the district court had authority to enter an order stopping the arbitration.

To be sure, *Textile* specifically indicates §4 does not apply to motions to compel. *See Textile*, at 785 ("Third, §4 is narrowly tailored. By its terms, it only embraces actions to compel arbitration. Thus, injunction actions, such as the one at bar, are properly considered under general venue provisions."). Moreover, *Textile* specifically cites *Merrill Lynch* to make the distinction between motions to compel and motion to enjoin. *See Textile*, pg. 785 n.1 ("For this reason, A..BMH's reliance on *Merrill Lynch, Pierce, Fenner & Smith v. Laue*r, 49 F. 3d 323 (7th Cir. 1995) is misplaced. Even assuming that *Lauer* survives *Cortez Byrd Chips*, it is factually inapposite to this case: the parties did not contest the existence of the arbitration

35

agreement itself, and the site for arbitration had already been fixed. Textile's suit

does not fit this paradigm.").

The Magistrate Judge cited three cases for the proposition that Ninth Circuit

District Courts may compel arbitration in other districts.  The first case, *Larson v.*

*Speetjens*, 2006 U.S. Dist LEXIS 87481 (N.D. Cal. 2006), actually says the opposite.

Citing *Textile*, Judge Armstrong wrote:

> … this Court will not order arbitration in another judicial district.  The
> Ninth Circuit's decision in *Continental Grain* has never been
> overturned.  Defendants' arguments notwithstanding, the decision is
> not limited to cases in which the party seeking to compel arbitration
> filed the federal suit.  It is a broad statement that a court may not compel
> arbitration in another judicial district.

*Id.* at 8.

The second case, *Mastro v. Momot*, 2009 U.S. Dist LEXIS 61726 (D. Az.

2009), also does not hold that a district court can order arbitration in another district.

After reviewing *Merrill Lynch* and Textile, the Court essentially refused to decide

the issue and simply questioned how future courts might rule.  Judge Silver wrote:

"Petitioners attempt to distinguish *Textile Unlimited* by noting that it involves an

action to enjoin arbitration rather than one to compel arbitration.  That may, in fact,

be correct.  However, given the newness of the issue in this circuit, it does raise

questions about Petitioner's likelihood of success on the merits."). *Id.* at 11.

Notably, numerous subsequent California district court cases hold that district

courts cannot compel arbitration in other districts. *See, e.g., Maxpower*

*Semiconductor, Inc. v. Rohm Co.*, 2021 U.S. Dist LEXIS 221362 (N.D. Cal. 2021)

("After all, under the Federal Arbitration Act, a district court can only compel

arbitration to occur within its district."); *Big Crane & Rigging Co. v. Agility Project*

*Logistics, Inc.*, 2020 U.S. Dist LEXIS 214084 (C.D. Cal. 2020) ("Under Ninth

Circuit law, Section 4 limits courts "to ordering arbitration within the district in

which the suit was filed.") (citing cases); *Guo v. Cyan, Inc.*, 2018 U.S. Dist LEXIS

227744 C.D. Cal. 2018) ("Accordingly, in the Ninth Circuit, a district court may not

compel arbitration in a district other than the district in which the motion or petition

to compel was filed").

The third case, *Grinberg v. Carevoyant, Inc.*, 2011 U.S. Dist. LEXIS 164614

(C.D. Cal. 2011), is not only an outlier, but it provides no analysis or reasoning to

justify why the Court had the power to compel an out of state arbitration.  The case

does not even cite *Textile.*  Accordingly, this Court should give it no credence.

In short, to the extent that this issue remains alive for the purposes of this

appeal, Worth Group and Mr. Wilshire cannot file this case in California because

the California court simply would not have the power to grant the relief they are

seeking: to compel Ms. Morales to arbitrate in Florida.  Consequently, transfer is

inappropriate under 28 U.S.C. §1404(a).

37

C.  <u>The Magistrate Judge Incorrectly Applied Federal Transfer Law</u>.

The Magistrate Judge also abused his discretion when he applied the factors necessary to make the transfer analysis.  First, he based his decision to transfer largely on unproven assertions by counsel.  Second, even under the analysis, Ms. Morales did not meet the high burden to displace Worth Group's and Mr. Wilshire's choice of forum.

The Magistrate Judge explained he considered the deference to be afforded to the Petitioner's choice of forum.  Based on the totality of circumstances, though, he determined transfer was appropriate.  The only factors the Magistrate Judge weighed in favor of transfer do not warrant transfer for the reasons below:

> <u>Factor Number One</u>:
> Morales signed the Worth contract with her FNB broker in the FNB offices in San Diego, California (DE 7-2 ¶¶ 2, 5).  No other witnesses were present, and Morales had no communications or meetings with Petitioners, in Florida or anywhere else, at any time (DE 7-2 ¶ 6).  As such, the relevant witnesses, documents, and other sources of proof will be found in California, and the Court therefore finds California to be the locus of operative facts.

Ms. Morales' affidavit does not support these findings.  For example, although she mentions she signed the contract with a broker, she never indicates there were no other witnesses.  In addition, Ms. Morales only says that she "never initiated any communications with Worth Group" "**to my knowledge.**"  In addition, in her contract, Ms. Morales agreed:

> You agree that for all purposes you have entered into this Agreement and the making of this Agreement has occurred in Palm Beach County, Florida, notwithstanding any events that may occur outside Palm Beach County, including the manner, timing, location the delivery or receipt of the acceptance of this Agreement by any party hereto. You also agree that the following events. among other, occurred in Palm Beach County, Florida: the negotiation of this contract will have taken place and have been completed in Palm Beach County, Florida; the contract will be executed in Palm Beach County, Florida;

Further, even granting Ms. Morales' explanation, the total sum of proof is one document (the contract), and two witnesses. This circumstance hardly creates the burden that justifies transferring this case.

> Factor Number Two:
> California also offers a better ability to compel the attendance of unwilling witnesses, if any, given that all relevant witnesses will be found in California.

All witnesses to this case will be subject to subpoena and deposition under the Federal Rules of Civil Procedure. The Court will be able to use these depositions to make any factual determinations.

Even if there were a basis for the Magistrate Judge's conclusion, the additional burden of depositions (especially in the age of remote video depositions) provides minimal or no basis for transferring the case.

> Factor Number Three:
> The relative means of the parties favors transfer. According to her arbitration claim, Morales is an elderly woman who was "completely wiped out" as a result of the FNB-recommended investments (DE 7-3 ¶¶ 2, 4-5).

39

Other than Ms. Morales' unsupported assertion in her arbitration demand, there is no basis for this conclusion.

Moreover, the facts do not justify this conclusion.  Ms. Morales has retained retain highly competent counsel from a law firm which describes itself as a "powerhouse, national trial firm" that has tried 132 cases to verdict since 2010 "in all 50 states. Africa, Asia Australia, Canada, the Caribbean, Europe, Mexico, Puerto Rico, the United Kingdom, and West Indies."  It is notable that Worth Group and Mr. Wilshire are represented by a solo practitioner.

In addition to these considerations, the Magistrate Judge overlooked the fact that Ms. Morales agreed in her contract that Florida would be an appropriate place for arbitrating her dispute.  The contract says (emphasis in original):

> **You and WORTH agree that Palm Beach County, Florida is a mutually and reasonably convenient place for any arbitration hearing concerning disputes relating to your transactions with WORTH or to this Agreement and that all arbitration proceedings subject to this Agreement shall occur before the Judicial Arbitration and Mediation Society ("JAMS") in Palm Beach County, Florida.**

Given the circumstances, to the extent that this issue remains part of this appeal, the Magistrate Judge abused his discretion by granting the motion to transfer.

## **CONCLUSION**

Based on the foregoing, Worth Group, Inc. and Andrew Wilshire request the Court vacate the Order Accepting Magistrate Judge's Report and Recommendation and Dismissing Case [D.E. 17], and remand the case to the District Court for further proceedings.

Respectfully submitted,

Stephen James Binhak, Esq.
THE LAW OFFICE OF STEPHEN JAMES BINHAK, PLLC
One Southeast Third Ave., Suite 2600
Miami, Florida 33131
Telephone: (305) 361-5500
binhaks@binhaklaw.com

By:___/s/ *Stephen James Binhak*
Stephen James Binhak

*Counsel for Counsel for Petitioners-Appellants Worth Group, Inc. and Andrew Wilshire*

**CERTIFICATE OF COMPLIANCE**

I certify that this Motion complies with the type-volume limitation set forth in Rule 32(g)(1) and 27(d) of the Federal Rules of Appellate Procedure.  The Motion uses Times New Roman 14-point typeface and contains **10,083** words.


/s/ *Stephen James Binhak*
Stephen James Binhak


**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on February 23, 2023, I electronically filed the foregoing with the Clerk of the Court using the Court's CM/ECF system.  I also hereby certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.


/s/ *Stephen James Binhak*
Stephen James Binhak


42